(89 App. Div. 99.)

CAMMANN et al. v. HUNTINGTON.

(Supreme Court, Appellate Division, First Department. December 24, 1903.)

1 PLEDGES—SALE—PURCHASE BY PLEDGEE—JURY QUESTION—SUFFICIENCY OF EVIDENCE.
Evidence *held* to require the submission to the jury of the question whether a pledgee of stock purchased at his own sale.

Appeal from Special Term, New York County.

Action by Charles L. Cammann and another against Freeman F. Huntington. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, O'BRIEN, and LAUGHLIN, JJ.

John R. Dos Passos, for appellant.

Eugene Frayer, for respondents.

LAUGHLIN, J. The plaintiffs are stockbrokers, and they bring
this action to recover the balance of an account alleged to be due and
owing from the defendant for moneys advanced and loaned to him.
Prior to the 8th day of November, 1899, Theodore W. Myers & Sons
were the defendant's brokers. He owed them a balance of account of
$45,252.30, as security for which he had pledged to them certain
stocks. The plaintiffs, at the request of the defendant, paid this in-
debtedness, and obtained and held the redeemed stock as security for
the amount thus advanced. The plaintiffs subsequently also advanced
$100 to the defendant. They sold part of his stock on a "stop order"
on the 11th and 12th days of December, 1899, and gave him notice
of the sales, crediting him with the proceeds. He denied their au-
thority to make the sales, and they immediately repurchased the stock
for him, and notified him thereof. They then demanded that the de-
fendant settle his account, and notified him that, if he did not, his
stock would be sold at public auction on December 20th at a time and
place specified in the notice. The defendant then opened negotia-
tions with the plaintiffs on the subject of giving them further security.
At his request the sale was adjourned two days, and the plaintiffs gave
a new notice in writing that, if he did not settle his account in the
meantime, the stock would be sold. The account was not settled, and
the stock was sold at public auction, at the time and place specified,
by licensed auctioneers. The defendant was credited with the pro-
ceeds of the sale, and this action is brought to recover the balance of
the account.

The answer put in issue many of the material allegations of the
complaint, and set up as a defense and counterclaim the wrongful
sale and conversion of the stock. Upon the trial the defendant gave
evidence tending to show that, when the notice of sale was served
upon him, he was informed that it was a mere matter of form, and
that he need pay no attention to it. The question was controverted,
but it presented an issue of fact as to whether the sale was made in
good faith, and that question was submitted to the jury. It has been
determined in favor of the plaintiffs.

The action is brought upon the theory of a valid sale of the stock,
and, as has been seen, to recover the balance of the account after cred-
iting the defendant with the proceeds of the sale. It was, therefore,
incumbent upon the plaintiffs to establish not only that they acted in
good faith, as the jury have found, but that an actual sale of the stock
to a person authorized to purchase was effected. It appears that
some of the stock was bid off by one H. L. Anstey, an outside broker,
who had deskroom with the plaintiffs, in his own name; that the
money to pay for the same was furnished by the plaintiffs, who gave
their checks to the order of the auctioneers for $24,062.50; and that
the auctioneer, in turn, gave them a check for the proceeds of the sale.
The defendant was represented in all of these transactions by his

brother Byron, who, it appears, had full authority to represent him. Byron testified: That subsequent to the sale he called on the plaintiffs, by direction of the defendant, and was cordially greeted by one of the plaintiffs, who said: "We want to fix up this matter. Come back in the office." That they started back together, and Cammann said: "We have paid lawyers enough. We do not propose to pay lawyers any more. This matter has cost us a thousand dollars now, and we want to fix it up." That the witness replied: "What do you propose to do, Mr. Cammann?" That Cammann replied: "We propose to put you back on the books as you were. Now, Mr. Huntington, I would like to have your brother open another account." That the witness replied: "Do you want more? Haven't you got enough?" That Cammann replied: "That is all right. You understand these things. Open another account. The old will take care of itself; and, if you make anything on the new account, you can apply it on the old, or not, as you choose. In that way you can make money, and so can we. Make a deposit of, say, $3,000." That the witness responded: "Mr. Cammann, I could not do it. I could not do it at the present time." That Cammann said that the other stocks were all right. That the witness tried to get him to say that they had the stocks, but he said: "Your stocks are all right. I can tell you, you are on the books now." That, while the witness and Mr. Cammann were conversing on this subject, Mr. Burr, an employé of the plaintiffs, came in, and Mr. Cammann, addressing him, said: "Mr. Burr, what do you think of this proposition? I have proposed that we put Mr. Huntington back on the books as he was. The market is going up. It is about the bottom now. That account will take care of itself. Now, then, if they open a new account, and make a deposit, say, of $3,000—" That Cammann said that in this way Mr. Huntington could make money, and so could the plaintiffs. That Mr. Burr replied: "I think that is a very fair proposition." That the witness said that he did not think it possible for his brother to furnish that amount of money, whereupon Cammann said: "Well, how is $1,500?" to which the witness replied: "I do not think he would be able to do it at the present time." That Cammann then said: "You know we can carry this stock and make money. You know how things are in Wall street. We can carry that stock and make money, but I want you in the office." This testimony is controverted by that of Burr, who was called as a witness for the plaintiffs. It was not controverted by Cammann, but it appears that he was in Europe. Burr also testified that the wife of Anstey had an account upon the books of the plaintiffs, that this money was advanced by them for her benefit, and that subsequently the stock was transferred to her account on their books. Neither Anstey nor his wife was called as a witness. This is the only material evidence relating to the question as to who was the purchaser of the stock at the sale. The defendant requested the court to direct a verdict in his favor upon the ground that it appeared that the stock was purchased by the pledgee, and that the transaction, therefore, did not constitute a sale. The court properly denied this motion upon the ground that it was a question of fact for the jury as to whether the plaintiffs did purchase the stock. The

court, in the main charge, merely submitted to the jury the question of the bona fides of the sale, depending on the conflicting testimony as to whether the defendant was informed that he need pay no attention to the notice of sale; but the court did not submit the question as to whether the plaintiffs purchased the stock, or instruct the jury on the law applicable in that event. Council for the defendant at the close of the charge requested the court to instruct the jury that:

"If the plaintiffs, through a third person, purchased the stock which was alleged to be sold at public auction on their own account, there was no sale of the same which would bind the defendant, unless they furthermore proved the defendant knew they bought in the stock, and did not, within reasonable time, repudiate the sale."

This request was refused by the court upon the ground that there was not sufficient evidence to warrant its submission to the jury, and counsel for the defendant duly excepted. We think this exception presents reversible error. It is significant that the plaintiffs furnished the money to pay for the stock at the auction sale, and that neither Anstey nor his wife was called as a witness to show that she was the purchaser. We merely have the testimony of an employé of the plaintiffs, who states that Anstey purchased the stock for his wife, and that the transaction was entered on the books of the plaintiffs as a sale to her. These entries may be fictitious, and, if the testimony of the defendant's brother as to the admissions made to him by Cammann is true, it would appear that they are fictitious, and that the plaintiffs had control of this stock, such as they could not well have had unless they were the owners. That question should have been submitted to the jury, with instructions as requested.

It follows, therefore, that the judgment and order must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.